Anna Y. Park, SBN 164242
Sue Noh, SBN 192134
Rumduol Vuong, SBN 264392
Lorena Garcia Bautista, SBN 234091
Jennifer L. Boulton, SBN 259076
Eric Yau, SBN 275457
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
255 East Temple Street, Fourth Floor
Los Angeles, CA 90012
Telephone: (213) 894-1083
Facsimile: (213) 894-1301
E Mail: lado.legal@eeoc.gov

Attorneys for Plaintiff
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

LITTLER MENDELSON, P.C.
Kevin V. Koligian, Bar No. 258711
Natalie M. Jansen, Bar No. 286401
5200 North Palm Avenue, Suite 302
Fresno, CA 93704-2225
Telephone: 559.244.7500
Facsimile: 559.244.7525
E-mail:kkoligian@littler.com
      njansen@littler.com

MICHAEL BEST & FRIEDRICH LLP
Amy Schmidt Jones (admitted pro hac vice)
Anne M. Carroll (admitted pro hac vice)
100 East Wisconsin Avenue, Suite 3300
Milwaukee, WI 53202-4108
Telephone: 414.271.6560
Facsimile: 414.277.0656
E-mail: asjones@michaelbest.com
      amcarroll@michaelbest.com

Brian P. Paul (admitted pro hac vice)
Two Prudential Plaza
180 North Stetson Avenue
Suite 2000
Chicago, IL 60601
Telephone: 312.222.0800
Facsimile: 312.222.0818
E-mail: bppaul@michaelbest.com

Attorneys for Defendant
Sensient Natural Ingredients LLC

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>        Plaintiff,<br><br>    v.<br><br>SENSIENT DEHYDRATED FLAVORS, COMPANY, SENSIENT DEHYDRATED FLAVORS, LLC., SENSIENT NATURAL INGREDIENTS, LLC., and Does 1-10 Inclusive,<br><br>        Defendants. | Case No: 1:15-CV-01431-DAD-BAM<br><br>**JOINT MOTION SEEKING APPROVAL OF THE PARTIES' PREVIOUSLY LODGED CONSENT DECREE (DKT. NO. 64); DECLARATION**<br><br>Date: July 18, 2017<br>Time: 9:30 a.m.<br>Judge: Hon. Dale A. Drozd<br>Courtroom: 5 |

**TO THE HONORABLE DALE A. DROZD, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 18, 2017, at 9:30 a.m., at the U.S. District Court for the Eastern District of California,), Plaintiff Equal Employment Opportunity Commission ("Plaintiff" or "EEOC"), and Defendant Sensient Natural Ingredients LLC f/k/a Sensient Dehydrated Flavors LLC and successor to Sensient Dehydrated Flavors Company ("Defendant" or "Sensient"). Plaintiff and Defendant, (collectively, the "Parties"), move for approval of the Parties' proposed Consent Decree (Docket No. 64) because the Consent Decree and associated settlement is fair, adequate, and reasonable.

|   |   |
|---|---|
|   | U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION |
| Dated: May 17, 2017 | /s/ *Rumduol Vuong*<br>Rumduol Vuong<br>Attorney for Plaintiff EEOC |

# I. INTRODUCTION

On May 17, 2017, Plaintiff EEOC (hereinafter "EEOC" or "Plaintiff") and Defendant Sensient Natural Ingredients LLC (incorrectly identified in the Complaint as "Sensient Natural Ingredients, LLC"), f/k/a Sensient Dehydrated Flavors LLC (incorrectly identified in the Complaint as "Sensient Dehydrated Flavors, LLC"), and successor to Sensient Dehydrated Flavors Company ("Defendant") lodged with the Court a proposed Consent Decree (the "Decree") setting forth the terms of the settlement negotiated by the EEOC and Defendant (the "Parties").

The Parties now move to seek the Court's approval of the proposed Decree for the following reasons: 1) the Decree is fundamentally fair, adequate, and reasonable; 2) the Decree is not illegal, a product of collusion, or against the public interest; 3) the Court's approval is justified as the decree aims to resolve an employment discrimination action and was negotiated by the EEOC, a federal agency tasked with enforcing civil rights laws against employment discrimination; and 4) the decree satisfies the preference for voluntary resolution and the overriding public interest in resolving this case expeditiously.

# II. STATEMENT OF THE CASE

### a. Pre-Suit History

The EEOC is a federal agency whose mission is to enforce federal civil rights statutes prohibiting employment discrimination. As part of the authority delegated by Congress, the EEOC may investigate charges of discrimination and bring suit against employers for violations of the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Acts of 1964 ("Title VII"), and other federal statutes. *See* 42 U.S.C. §12117(a). Here, the current action emanates from a charge of discrimination filed with the EEOC by Maria Rodriguez in May 2011, alleging disability discrimination under the ADA, as amended. (Ex. A, Vuong Decl. ¶2 ).

After receipt of the Rodriguez charge and pursuant to its statutory authority, EEOC conducted an investigation into the allegations of discrimination and in September 2013 issued a finding that there was reasonable cause to believe that a violation of the ADA had occurred. (*Id.* at ¶¶3, 4). Following this finding, EEOC and Defendant attempted to informally resolve this

matter through conciliation, but such efforts proved unsuccessful.  (*Id.* at ¶5).

   **b.    Procedural History**

On September 21, 2015, Plaintiff EEOC filed its Complaint against Defendant alleging disability discrimination under the Americans with Disabilities Act of 1990 ("ADA"), as amended by the ADA Amendment Act of 2008 ("ADAAA"). EEOC's suit alleged unlawful employment practices on the basis of disability and sought to provide appropriate relief to Charging Party Maria Rodriguez,  a class of identified claimants (Bertha Montoya, Magdalena Gonzalez, Francisco Cuevas, and George Briscoe), and other unidentified individuals who allegedly were similarly adversely affected by such practices. (Docket No. 1, Pl.'s Compl.)  In their responsive pleading, Defendant denied the claims and allegations raised by EEOC in the Action.  (Docket No. 11, Defs.' Answer).

On April 6, 2016, the Parties attended the initial Scheduling Conference before Magistrate Judge Barbara McAuliffe.  (Docket No. 35).  Both prior and subsequent to the scheduling conference, the Parties propounded and responded to extensive written discovery. (Ex. A, Vuong Decl. at ¶ 6).

On September 20, 2016, the Parties participated in a private mediation and continued negotiations on the monetary relief and injunctive remedies contained in the Consent Decree for approximately seven months.  From September 2016 to March 2017, the Parties exchange of numerous drafts of the proposed decree and several telephonic conferences in attempting resolve their disputes.  (*Id.* at ¶ 7).

As a result of the mediation and the lengthy arms' length negotiations undertaken by the Parties, the Parties were able to reach a settlement on monetary and injunctive terms.  The Parties now files this joint motion seeking approval of the Proposed Consent Decree, submitted herewith.

/ / /

/ / /

/ / /

/ / /

**c.     Proposed Consent Decree**

The major elements of the relief contained within the Proposed Consent Decree are summarized below:

1. Injunctive Relief

i. *General Injunction*

Pursuant to the terms of the proposed decree, Defendant is enjoined from engaging in employment practices that discriminate against qualified individuals on the basis of their disability. (Docket No. 64, Proposed Consent Decree, §VIII.A). Defendant is further enjoined from retaliating against employees or applicants because of that individual's opposition to practices that are unlawful under the ADA/ADAAA, the person's participation in an investigation or proceeding in connection with this lawsuit or relating to any claim of an ADA/ADAAA violation, the person sought an accommodation under the ADA/ADAAA, or the person is associated with an employee who has engaged in any of the activities detailed above. *Id*. at §VIII.B. Defendant is additionally required to engage in the interactive process and provide qualified individuals with disabilities reasonable accommodations, unless doing so would result in undue hardship. *Id*. at §VIII.C.

ii. *Internal EEO Monitor*

Pursuant to the terms of the proposed Decree, Defendant would designate an internal Equal Employment Opportunity Monitor ("Monitor"). The Monitor is subject to the EEOC's approval and the Monitor's primary responsibilities will include ensuring that Defendant carries out specified terms of the Decree. To that end, the Monitor will ensure Defendant's policies are reviewed and revised especially with regard to requests for leave or other forms of reasonable accommodations, ensuring effective training of Defendant's employees on their rights and responsibilities under the ADA/ADAAA, ensure Defendant creates a centralized tracking system for requests for accommodations, and ensuring Defendant meets its reporting and record keeping obligations *Id.* at §IX.A.

iii. *Policies and Procedures*

Pursuant to the terms of the proposed decree, Defendant will review and, if necessary,

revise its policies and procedures with regard to disability discrimination, reasonable accommodation and retaliation. Defendant will further ensure that its policies are distributed to all employers. *Id.* at §IX.B.

      iv.  *Training*

  Pursuant to the terms of the proposed Decree, Defendant will provide live and interactive training on ADA/ADAAA , including training on employees' rights, Defendant's policies and procedures for interactive and accommodation process, and procedures for reporting disability discrimination. Defendant shall further provide training to their supervisory and human resources employees on Defendant's obligations under the ADA/ADAAA, including training on the interactive process and reasonable accommodation and the supervisory employee's responsibilities with respect to the same. *Id.* at §IX.D.

      v.  *Record Keeping & ADA Coordinator*

  Pursuant to the terms of the proposed Decree, Defendant will establish procedures to provide for the centralized tracking of requests for accommodations and disability discrimination complaints in an Accommodation Log. *Id.* at §IX.E. Defendant will also designate an internal ADA Coordinator who shall be responsible for tracking, monitoring, and processing requests for accommodations and reporting on such requests. *Id.*

      vi.  *Reporting*

  Pursuant to the terms of the proposed Consent Decree, Defendant will provide annual reports to EEOC. The reports will include attendance lists for training sessions, employees' acknowledgement of receipt of policies, description of all disability discrimination complaints made during the relevant time period, verification of notice posting, status of Defendant's compliance with the terms of the Decree, and whether any revisions of policies and procedures regarding reasonable accommodation, disability discrimination or retaliation have been made during the reporting period. *Id.* at §IX.F.

    2.  <u>Monetary and Victim-Specific Relief</u>

      i.  *Monetary Relief*

  In addition to the injunctive remedies, the proposed Decree further provides monetary

and victim-specific relief to known claimants and establishes a process through which monetary relief may be provided to potential claimants. *Id.* at §VII. Under the proposed terms of the Decree, Defendant will pay up to $800,000 with $600,000 going to the eight (8) known claimants and up to $200,000 in a contingent class fund from which currently unknown potential claimants may obtain relief. *Id.* at §§VII.A and B. EEOC has full and complete discretion to determine the eligibility and allocation of monetary relief among the claimants.

**III.  LEGAL STANDARD FOR APPROVAL OF THE CONSENT DECREE**

The Ninth Circuit has determined that the "universally applied standard" by which to judge settlements is whether the proposed Decree is "fair, adequate, and reasonable." *Officers for Justice*, 688 F.2d 615. Indeed, "[u]nless a consent decree is unfair, inadequate, or unreasonable, it ought to be approved." *S.E.C. v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984).

When considering whether to enter a proposed consent decree, district courts "should be guided by the general principle that settlements are to be encouraged." *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1981). "[A] trial court approving a settlement need not inquire in the precise legal rights of the parties nor reach and resolve the merits of the claims or controversy. In fact, it is precisely the desire to avoid a protracted examination of the parties' legal rights that underlies entry of consent decrees." *Bragg v. Robertson*, 83 F.Supp.2d 713, 717 (S.D.W.Va. 2000). Furthermore, it is well-settled that voluntary settlement is the favored method of obtaining relief for unlawful employment discrimination. In enacting Title VII, "Congress has specifically endorsed voluntary compliance and settlement as the preferred means of achieving the elimination of unlawful employment discrimination." *Moore v. City of San Jose*, 615 F.2d 1265, 1271 (9th Cir. 1980) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1977)). Thus, "the principles favoring negotiated settlements in general, and especially in Title VII cases, dictate that the merits of the underlying claims will remain unresolved." *Id.* In other words, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice v. Civil Service Com'n of City and Cty. Of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *Moore*, 615 F.2d at 1271.

As the Supreme Court explained consent decrees, "are entered into by parties to a case after careful negotiation has produced agreement on their precise terms… the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *United States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971). Moreover, in examining a decree entered into negotiated by the government, "the courts should pay deference to the judgment of the government agency which has negotiated and submitted the proposed judgment." *Randolph*, 736 F.2d at 529 (citing *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir.1977)); s*ee also United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1436 (6th Cir. 1991) (noting judicial deference towards approving settlements is particularly strong where the decree has been negotiated by government attorneys on behalf on a government agency that is an expert in its field).

As such, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 624. In order to evaluate whether a settlement is fundamentally fair, adequate and reasonable, the Ninth Circuit has found that the district court's "ultimate determination will necessarily involve a balancing of several factors." *Id.* These factors include, but are not limited to,

> [T]he strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id*. This list is not exhaustive. Rather, the Ninth Circuit declined to provide an exhaustive list or identify which factors are most significant, instead deciding that, "[t]he relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature

6

1 of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Id.* Importantly, the trial court is not to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute." *Id.*

**IV. THE PROPOSED CONSENT DECREE SHOULD BE APPROVED**

    **a. The Proposed Consent Decree Meets the Standard for Court Approval**

        1. <u>The Proposed Decree is Fair, Adequate, and Reasonable</u>

The Consent Decree is fair because it provides compensation (*i.e.*, monetary relief) for claimants who the EEOC contends were terminated due to their use of leave or who were denied reasonable accommodations. As Defendant has disputed the claimants' entitlement to relief, the Decree affords a certain remedy in lieu of an uncertain outcome through the litigation process. As the action was brought solely by the EEOC, which does not take attorney's fees, all monetary relief will go directly to the claimants. Additionally, the Decree is fair because Defendant has agreed to substantial injunctive relief through which Defendant will create safeguards and protections for current and future employees to ensure that their employment rights are not adversely affected. In particular, Defendant's training of its employees and review and revision of its policies and procedures are all intended to better inform employees and management personnel of their rights, responsibilities, and obligations under the ADA/ADAAA. Likewise, the designation of an internal ADA Coordinator and Monitor will ensure that Defendant engages employees with disabilities in the interactive process, provides reasonable and effective accommodations that do not impose an undue burden on Defendant's business, and prevents disability discrimination.

The proposed Decree is also adequate because it completely resolves the instant litigation. (Docket No. 64, Proposed Consent Decree, § I.A). The Decree provides that the Action is fully and completely resolved by entry of the Decree's entry. In addition, by its terms, the proposed Decree "is binding on and enforceable against Defendant and its successors and assigns." *Id.* As specified in the Decree, the Decree offers the Parties a way "avoid the additional expense, delay, and uncertainty that would result from further litigation of this lawsuit." *Id.* at §I.B.

With regard to reasonableness, the overriding consideration should be the extent to which the overall relief is consistent with and supports the public interest. As a federal agency and the sole plaintiff in this case, EEOC litigates not only to secure victim-specific relief on behalf of victims of alleged discrimination but also to vindicate the overriding public interest in eradicating employment discrimination. *General Telephone Co. of Northwest v. EEOC*, 446 U.S. 318, 324-26 (1980); *EEOC v. Waffle House*, 534 U.S. 279, 291 (2002) (finding that pursuant to the statutes, EEOC does not function simply as a vehicle for conducting litigation on behalf of private parties, but "clearly makes the EEOC the master of its own case"). As such, the Commission has the authority to both seek victim-specific relief on behalf of the claimants and to obtain injunctive relief to further the public's interest in preventing disability discrimination through this suit. Here, the public interest is achieved through the provision of monetary relief as well as injunctive remedies. The monetary relief provides compensation to the known and potential claimants while the injunctive remedies are designed as safeguard against future incidents of disability discrimination in this work force.

Furthermore, the reasonableness of a proposed decree should be measured against the cost of litigation and the potential outcome if the case went to trial. Should this case have proceeded to litigation or even trial, it would have required extensive factual and expert discovery. Indeed, both parties would spend significant resources, time, and money to litigate this case as the conservative estimate was that the parties needed a year of discovery. (Docket No. 34 at § VII) (EEOC estimated discovery would take eighteen (18) months while Defendant estimated discovery taking one year). Expenditures would be significant as the case involves multiple claimants and a resolution through a trial would likely not occur for several years. Indeed, discovery and motion practice in this case would likely exact a significant burden on the time and resources of the parties as well as the judiciary. Thus, a settlement at this juncture has significant value. As demonstrated by the terms of the decree, the Court should approve the Parties' proposed Decree because it is fair, adequate, and reasonable.

///

///

### 2. The Proposed Decree is Not the Product of Fraud or Overreaching by, or Collusion Between, the Negotiating Parties

The proposed Decree was negotiated at arms-length and involved over half a year of negotiations, including in-person mediation, numerous telephonic conferences and exchanges of written drafts. Each provision of the proposed Decree is lawful under the ADA/ADAAA and is not contrary to public policy. Indeed, the proposed Decree advances the ADA/ADAAA's underlying policies by providing significant injunctive remedies that will better inform and protect future and current employees. The Decree sets forth mechanisms by which Defendant can ensure its business complies with the ADA/ADAAA and affords appropriate protections and information to their employees. In sum, the Decree is reasonable and consistent with public policy.

**V.  CONCLUSION**

Based on the foregoing, the Parties respectfully move that the Court approve the Parties' Proposed Consent Decree. (Docket No. 64).

Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

Dated: May 17, 2017   /s/ *Rumduol Vuong*
Rumduol Vuong
Attorney for Plaintiff EEOC